UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAKYA WILLIAMS,

               Plaintiff,

v.

MUHAMED MUSTAFA, *et al*,

               Defendants.

_____/

Case No. 08-10197

Robert H. Cleland
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION TO DISMISS AND
MOTION FOR SUMMARY JUDGMENT (Dkt. 21, 28)**

## I.  PROCEDURAL HISTORY

Plaintiff, Nakya Williams, is a prisoner in the custody of the State of Michigan.  (Dkt. 1).  Pursuant to 42 U.S.C. § 1983, plaintiff filed a complaint against defendant on January 14, 2008, alleging that defendant violated his constitutional rights.  *Id.*  Plaintiff sought to proceed under the provisions of 28 U.S.C. § 1915(a), which allows a party to file a complaint without payment of customary court fees.  (Dkt. 2).  On January 17, 2008, plaintiff's application to proceed *in forma pauperis* was granted.  (Dkt. 3).  District Judge Robert H. Cleland referred this matter to the undersigned for all pre-trial matters on February 4, 2008.  (Dkt. 6).

Defendant filed a motion to dismiss on June 5, 2008, asserting that plaintiff failed to exhaust his administrative remedies and failed to state a claim.  (Dkt. 21). Plaintiff filed a response on June 25, 2008 and defendant filed a reply on July 8, 2008.  (Dkt. 23, 24).  On September 30, 2008, defendant also filed a motion for summary judgment.  (Dkt. 28).  Plaintiff filed a response on November 3, 2008 and plaintiff filed a reply on November 11, 2008.  (Dkt. 31, 32).

For the reasons set forth below, it is **RECOMMENDED** that defendants' motion to dismiss be **GRANTED** in part, in the alternative, that defendant's motion for summary judgment be **GRANTED**, and that plaintiff's state law claims be **DISMISSED** without prejudice

## II.     STATEMENT OF FACTS

### A.     Plaintiff's Complaint

According to plaintiff's complaint, he has been suffering from chronic stomach problems since 1999.  (Dkt. 1).  He claims he has been to Huron Valley healthcare at least 100 times and has not received proper medical treatment.  (Dkt. 1).  Plaintiff describes receiving continuous testing and treatment at this facility, but claims that defendant, Dr. Mustafa, should have referred him to an "abdominal specialist."  *Id*.  Plaintiff claims that defendant's failure to get to the "root" of his

stomach problems violated his Eighth Amendment rights and constitutes deliberate indifference.  *Id*.

B.   MDOC Grievance Policy Directive

In conjunction with its motion to dismiss, defendant submitted a copy of the applicable MDOC policy directive that sets forth the grievance procedures in effect at the time plaintiff submitted his grievance.  (Dkt. 21, Ex. B, MDOC Policy Directive 03.02.130, eff. 3/5/07).  The MDOC grievance procedure explains that "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures."  (Dkt. 21, Ex. B, p. 1).  The grievance procedure also requires that the information provided "is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what when, where, why, how)" and that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included."  (Dkt. 21, Ex. B, p. 4, § R).  Grievants are encouraged, however, to limit the information in the grievance form and to state the issue briefly.  *Id*.

Within five days of attempting to resolve a dispute with staff, a prisoner may send a completed grievance form to the Step I Grievance Coordinator designated for the facility.  (Dkt. 21, Ex. B, § V, p. 4).  And, if the merits of the

grievance are addressed, the grievant must be interviewed in order to "explain the grievance more completely" and to enable the respondent to "gather any additional information needed to respond to the grievance." (Dkt. 21, Ex. B, p. 5, § Y). If the grievant is not interviewed, the reason must be included in the written response to the grievance. (Dkt. 21, Ex. B, p. 5, § Y). In response to the Step I grievance, the respondent must identify all policies, rules, or procedures that are related to the issue or conduct grieved. (Dkt. 21, Ex. B, p. 5, § Z). At Step I, the Grievance Coordinator "shall ensure that a thorough investigation was completed for each Step I grievance accepted," that the response was reviewed by the appropriate supervisor, and that a copy of the response is provided to the grievant by the due date. (Dkt. 21, Ex. B, p. 5, § AA).

If a grievant is not satisfied with the Step I response or does not receive a timely response, he may request an appeal of the Step I grievance to Step II. (Dkt. 21, Ex. B, p. 5, § BB). If the Grievance Coordinator determines that the Step II grievance should be accepted, he must then assign an appropriate respondent. *Id*. The MDOC grievance procedure sets forth the appropriate respondents for Step II, depending on the location and subject matter of the grievance. (Dkt. 21, Ex. B, pp. 5-6, § DD). For example, if a grievance alleges inadequate medical care, the Regional Health Administrator or designee is the appropriate Step II respondent.

*Id.* The Grievance Coordinator shall then ensure that "any additional investigation was completed as necessary for each Step II grievance accepted...." (Dkt. 21, Ex. B, p. 6, § EE).

If a prisoner is not satisfied with the Step II response, he may file a Step III grievance with the Prisoner Affairs Section. (Dkt. 21, Ex. B, p. 6, § FF). A Step III appeal must be sent to the Prisoner Affairs Sections within 10 business days after the prisoner receives the Step II response, or within 10 business days after the response was due. *Id.* If a Step III grievance involves medical care or treatment, the Prison Affairs Section must forward any such grievance to the Bureau of Health Care Services (BHCS), who must ensure that the grievance is investigated and a timely response provided. *Id.* The Manager of the Prisoner Affairs Section must ensure that any additional investigation is completed as necessary for Step III. *Id.*

The MDOC Policy Directive also explains that a grievance *may*[1] be rejected if it is: (1) vague, illegible, contains multiple unrelated issues, or raises issues that

---

[1] A grievance coordinator *must* reject grievances (1) that are jointly filed by two or more prisoners or identical individual grievances filed by multiple prisoners as an organized protest, (2) which raise certain non-grievable issues, and (3) that use profanity, threats of harm or demeaning language unless those words are part of the description of the behavior which forms the basis for the grievance. (Dkt. 21, Ex. B, pp. 1-2, § F).

are duplicative of another grievance already filed by that grievant; (2) the grievant is on modified access and has filed a grievance in violation of those applicable procedures; (3) the grievant did not attempt to resolve the issue with the staff member involved prior to filing of the grievance unless prevented from doing so by circumstances beyond the grievant's control; or (4) the grievance is filed in an untimely matter, although, a grievance shall not be rejected as untimely if there is a valid reason for the delay.  (Dkt. 21, Ex. B, pp. 1-2, § G).

      C.    <u>Plaintiff's Grievance</u>

Plaintiff submitted his Step I grievance on March 29, 2007.  (Dkt. 21, Ex. A).  According to the grievance, the date of the "incident" being grieved is January, 2006.  *Id*.  Plaintiff wrote that his stomach problems have been going on for years and he has "kited"[2] health care a number of times to get treatment for his problems.  He claims that Dr. Mustafa never got "back in touch" with him to tell him what the problem is.  *Id*.  In the response to Step I, the respondent wrote that, during the interview of plaintiff, he described his dissatisfaction with the frequency of his bowel movements and was requesting "surgery."  *Id*.

---

    [2] A "kite" is an informal written complaint or request submitted by a prisoner.

Respondent, a registered nurse, concluded that there was no medical need for plaintiff to undergo surgery.  *Id*.

Plaintiff filed a Step II grievance appeal on April 25, 2007, indicating that the "date of the incident" was April, 2007.  (Dkt. 21, Ex. A).  Plaintiff wrote that he has had a "chronic stomach problem since 1999 and I am not receiving proper medical treatment for it."  *Id*.  At Step II, the respondent denied the grievance and wrote that, "during the time frame in question, there were no complaints grievant submitted to health care regarding treatment for his stomach problems.  Grievant is encouraged to access health care through the kite process to address any current health care concerns."  *Id*.

Plaintiff's Step III appeal is undated, but it is stamped "received" on July 25, 2007.  (Dkt. 21, Ex. A).  Plaintiff wrote that "health care claims that I never made a complaint about my stomach problems when I have seen a doctor about my problem numerous times to get treatment."  *Id*.  He further wrote that he was "on milk of magnesia from 1999 until 2004" and he was also on "perricolace" for several years.  *Id*.  Plaintiff again described dissatisfaction with the frequency of his bowel movements, saying that if he was "lucky," he could have one every day. *Id*.  He also states that he has a "medical detail" that he cannot work because of his stomach problems.  *Id*.  In the Step III response, it was noted that the medical

record revealed that plaintiff was treated for his stomach problems with medication in July, 2007. *Id.* Plaintiff was also "encouraged to communicate with health care through the heath care request process and provide them with a description of symptoms so his medical needs can be addressed." The Step III grievance appeal was denied. *Id.*

D.   The Motion to Dismiss

1.   Defendant's position

Defendant asserts several reasons that plaintiff's complaint should be dismissed. The first reason is that, according to defendants, plaintiff failed to exhaust his administrative remedies. Specifically, defendants claim that plaintiff failed to try to resolve the issue with staff within two days of its occurrence and then failed to file his grievance within five days after attempting to resolve it with staff. (Dkt. 21, pp. 6-7). Defendant argues that the date of the "incident" was January, 2006, but that plaintiff did not file a grievance until March 29, 2007, more than one year later, which makes the grievance untimely. *Id.* In addition, defendant argues that plaintiff failed to timely file his Step II grievance appeal, which was due on April 18, 2007, but not filed until April 25, 2007. (Dkt. 21, p. 7).

The second reason for defendant's motion to dismiss is that plaintiff's complaint fails to rise to the level of a constitutional violation.  (Dkt. 21, pp. 7-10). Defendant argues that plaintiff's allegations – that he has had stool samples, x-rays, and blood samples taken, and that he was prescribed milk of magnesia and other medications, that he was regularly seen by defendant, and that other tests were conducted – just illustrates that his claim of deliberate indifference fails as a matter of law.  (Dkt. 21, p. 9).  Defendant also argues that the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims, or in the alternative, such claims should be dismissed because plaintiff failed to provide a notice of intent, which is required under the Michigan medical malpractice statute. (Dkt. 21, pp. 10-15).

    2.    Plaintiff's response

Plaintiff claims that defendant's argument that he failed to exhaust his administrative remedies is "disingenuous" because his complaint was an "ongoing issue" with no real "start" date.  (Dkt. 23, p. 3).  Plaintiff also argues that the mere fact that defendant examined and treated him does not defeat his deliberate indifference claim.  He argues that it is "conceivable that Plaintiff could prove facts that establish Defendant was deliberately indifference even where Defendant was acting like doctor and giving the appearance that he was providing medical

assistance." (Dkt. 23, pp. 2-3).  Plaintiff argues that he should be excused from complying with the Michigan notice of intent requirements because he is incarcerated. (Dkt. 23, p. 3).

  E. <u>Motion for Summary Judgment</u>

   1. Defendant's position

A medical need is "objectively serious" if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Co.*, 390 F.3d 890, 895 (6th Cir. 2004).  According to defendant, "Constipation and indigestion have been found by numerous courts to not constitute a medical need that is sufficiently serious enough to warrant Eighth Amendment protection."  (Dkt. 20, p. 11), citing, *Moy v. Evans*, 2007 U.S. Dist. LEXIS 6843, *6 (S.D. Ill. 2007) (finding that the plaintiff failed to demonstrate that he had a serious medical need when his only complaints were of constipation and accompanying pain); *Webb v. McKnight*, 2006 U.S. Dist. LEXIS 91963, *4 (W.D. Va. 2006) (finding that the injuries alleged by the plaintiff, which included constipation and indigestion, were not sufficiently serious to rise to the level of an Eighth Amendment violation); *Ross v. McGinnis*, 2004 U.S. Dist. LEXIS 9367, *26 (W.D.N.Y. 2004) (finding that plaintiff's complaints, which included

constipation, did not constitute a serious medical need).  Thus, according to

defendant, plaintiff has not and cannot satisfy the objective prong of the deliberate

indifference test.

Defendant also argues that plaintiff cannot satisfy the subjective prong of

the deliberate indifference test because he was not deliberately indifferent to

plaintiff's medical needs.  According to defendant, this is not a case involving

deliberate indifference, but rather one involving a difference of medical opinion.

And, although plaintiff did not have a serious medical need, his medical chart

makes clear that every time he presented to defendant with complaints of stomach

pain, he was provided with timely treatment consistent with his symptoms.

According to defendant, plaintiff has not put forth any affirmative evidence

demonstrating that defendant "subjectively perceived that Plaintiff was faced with

a substantial risk of harm to which he acted with deliberate disregard."  While

plaintiff argues that defendant's treatment of him was improper, and that he should

have been sent to an abdominal specialist or had surgery on his stomach,

defendant argues that plaintiff  has not put forth any affirmative evidence in

support of this contention.  Thus, plaintiff's argument is nothing more than a

difference in medical opinion, which cannot amount to deliberate indifference.

(Dkt. 28, p. 15, citing, *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

According to defendant, at his deposition, plaintiff virtually conceded that this case is "nothing more than a difference of medical opinion when he testified that no matter what a physician told him, he believes he needs stomach surgery." (Dkt. 28, p. 15, citing, Exhibit D, p. 47). Defendant argues that the constitution does not require that plaintiff "receive the medical care that he desires, only that which is in line with the medical condition that [defendant] subjectively perceived was affecting Plaintiff. *Id*., citing, *Farmer v. Brennan*, 511 U.S. 825, 837-838 (1994). Thus, plaintiff failed to satisfy his burden of demonstrating that defendant "had a subjective perception that Plaintiff was faced with a substantial risk of harm to which he acted with deliberate disregard, and has failed to put forth any affirmative evidence to satisfy this burden."

　　　2.　　Plaintiff's response

Plaintiff argues that the "total disregard for [his] well-being should be sufficient enough to demonstrate deliberate indifference." (Dkt. 31, p. 6). Plaintiff asserts that defendant allowed his continuous pain to go untreated and should have referred him to a specialist. *Id*. Plaintiff also asserts that defendant persisted in a course of treatment that he knew to be ineffective. (Dkt. 31, p. 7).

Report and Recommendation
Defendants' Motions to Dismiss/Summary Judgment
*Williams v. Mustafa, et al*; No. 08-10197

## III.    DISCUSSION

### A.    Standards of Review

#### 1.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly*, 127 S.Ct. at 1964-65 (citations and quotation marks omitted).

And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.*, quoting, *Twombly*, 127 S.Ct. at 1965 (internal citation and quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500

F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

> *Twombly* also referred to "plausibility" as the measure of pleading sufficiency, stating that allegations must "nudge[ ] ... claims across the line from conceivable to plausible" to survive a motion to dismiss, but cautioned that it was not adopting or applying a "heightened pleading standard." *Id*. at 1974.  As one district court recently observed, the "plausibility" standard has caused some confusion and uncertainty in the federal courts. *Interspan Distribution Corp. v. Liberty Ins. Underwriters, Inc*., 2008 WL 905354, *8 (S.D. Tex. 2008)*. The Third Circuit concluded that it is related to the requirement of a Rule 8 "showing," which only requires notice of a claim and its grounds, as opposed to a pleader's bare averment that he wants relief and is entitled to it.  *Interspan*, at *8, citing, *Phillips v. Allegheny Co.*, 515 F.3d 224, 234 (3d Cir. 2008) (internal citations and quotation marks omitted).  "The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element[]." *Phillips*, 515 F.3d 224 at 234.  The Second Circuit has

summarized *Twombly* as endorsing "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Interspan*, at *8, quoting, *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007).

The Sixth Circuit recently recognized that in *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496, 503 n. 6 (6th Cir. 2008) (internal citations and quotation marks omitted), citing, *Iqbal*, 490 F.3d at 157-158.  The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2).  Such is not the case here.  Thus, when applying *Twombly*, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992);

*Erickson v. Pardus*, 127 S.Ct. at 2200 (The Court of Appeals improperly departed

"from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to

"liberally construe" the *pro se* complaint at issue.).

        2.     Summary judgment

Rule 12(d) also provides that, if the moving party presents and the Court

relies on matters *outside* the pleadings, "the motion [under Rule 12(b)(6)] must be

treated as one for summary judgment and disposed of as provided in Rule 56.  All

parties must be given a reasonable opportunity to present all the material that is

pertinent to the motion."  Fed.R.Civ.P. 12(d).  Thus, the plain language of the rule

requires that if the motion relies on outside materials that the Court considers, then

the motion "must" be converted into a motion for summary judgment pursuant to

Rule 56.  *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).

With respect to defendant's argument that plaintiff failed to exhaust his

administrative remedies, the parties submitted, and the undersigned has

considered, evidence that is outside the pleadings.  Thus, in this respect, the Court

will treat defendant's motion to dismiss as one for summary judgment under Rule

56.

Summary judgment is proper where no genuine issue of material fact exists

and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P.

56(c).  In considering a motion for summary judgment, the evidence and all

reasonable inferences must be construed in favor of the nonmoving party.  *Tanner*

*v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006).  "[A] party seeking

summary judgment always bears the initial responsibility of informing the district

court of the basis for [his] motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue

of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

> B.   Exhaustion

>> 1.   Burden of proof

In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), the United States

Supreme Court held that "exhaustion is an affirmative defense, and prisoners are

not required to specifically plead or demonstrate exhaustion in their complaints."

*Id*. at 923.  The Court defined the level of detail necessary to exhaust as simply

compliance with the administrative grievance process.  *Id*.  Moreover, the burden

rests on the defendant to show that a plaintiff failed to exhaust when asserting

exhaustion as an affirmative defense.  *Id*.  Accordingly, exhaustion is satisfied if

plaintiff complied with the applicable MDOC grievance procedure and defendants

bear the burden of showing otherwise.  *Kramer v. Wilkinson*, 226 Fed.Appx. 461,

462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially

pleading and proving exhaustion; rather, this affirmative defense may serve as a

basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher

hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby

County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party

has the burden-the plaintiff on a claim for relief of the defendant on an affirmative

defense-his showing must be sufficient for the court to hold that no reasonable

trier of fact could find other than for the moving party." *Calderone v. United

States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit repeatedly has

emphasized that the party with the burden of proof "must show the record contains

evidence satisfying the burden of persuasion and that the evidence is so powerful

that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

      2.    Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a)

as "using all steps that the agency holds out, and doing so *properly* (so that the

agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 126

S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.

2002) (emphasis in original).  "Proper exhaustion demands compliance with an

agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.  The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 2387, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002) (alteration omitted).  Exhaustion serves a dual purpose:  it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 2387-88.  Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).  The critical holding in Jones was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance

procedures.  As observed in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem.  *Jones*, 127 S.Ct. at 923; *see also* *Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.").

> 3.    Plaintiff sufficiently exhausted his administrative remedies.

Nothing in *Jones v. Bock* or *Woodford* altered the well-established principle that when merits of a grievance are addressed, any claimed procedural defect not raised during the administrative process is waived and cannot form the basis of a failure to exhaust defense.  Under the PLRA and *Woodford*, "both parties are obligated to raise objections in the administrative proceedings in order for the issue to be properly before a reviewing court."  *Baker v. Vanderark*, 2007 WL 3244075, *7 (W.D. Mich. 2007).  If the Court accepted defendants' position, a prisoner would never have notice that his grievance did not comply with the grievance procedure.  Further, accepting defendants' position would place the burden of raising an objection only on a prisoner and not on the persons administering the grievance process.  This interpretation is inconsistent with the exhaustion doctrine and the purpose of the PLRA:  "[w]hen prison officials fail to

raise procedural problems during the grievance process, too many suits make it to federal courts on a record where the procedural problem has not been adequately developed."  *Id*. at *7.  "By accepting the grievance, investigating the claim, and responding on the merits all the way through Step III of the procedure, [the defendants] cannot now raise a procedural problem for the first time in this Court." *Id.*

Other courts, including this district, have reached the conclusion that *Woodford* is not controlling because it did not involve a situation where the grievance is addressed on the merits.  *See e.g.*, *Broder v. Correctional Medical Services, Inc.*, 2008 WL 704229, *2 (E.D. Mich 2008) ("Where the prison officials themselves overlook a prisoner's failure to comply with procedural requirements and address the prisoner's grievance on the merits, the procedural default rule established by *Woodford* is inapplicable."); *see also Johnson v. Beardslee*, 2007 WL 2302378 (W.D. Mich. 2007) (finding exhaustion satisfied because MDOC accepted the grievance and addressed it on the merits rather than rejecting it or denying it as untimely).  Since the grievance at issue was not rejected at any point as untimely, and it was addressed on the merits, any procedural defect was waived. Thus, plaintiff's grievance was exhausted and defendant's motion for summary judgment on this basis should be denied.

Report and Recommendation
Defendants' Motions to Dismiss/Summary Judgment
*Williams v. Mustafa, et al*; No. 08-10197

C.    Plaintiff Fails to State a Claim Because He Does Not Allege a "Serious Medical Need."

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981).  Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs.  *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake*, 537 F.2d at 860.  To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one.  He must show that he had a serious medical need and he must show that a defendant, being aware of that need, acted with deliberate indifference to it.  *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).  A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention.  *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988).  A serious ailment requires immediate attention or is potentially life-threatening:  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citation

omitted), overruled on other grounds, *WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997).

Several courts have already determined that allegations like those plaintiff makes in this case simply do not rise to the level of an objectively serious medical need. For example, in *Henderson v. Virginia*, 2008 WL 204480, *15 (W.D. Va. 2008), the court concluded that plaintiff's allegations – that he suffered from "brief episodes of vomiting, stomach pain, and difficulty breathing"– were not sufficiently serious to give rise to an Eighth Amendment claim. *See also Webb v. McKnight*, 2006 WL 3761382, *2 (W.D. Va. 2006) (finding that plaintiff's complaints of indigestion, constipation, headaches, vomiting, and emotional distress did not constitute a serious medical need); *Ross v. McGinnis*, 2004 WL 1125177, *10 (W.D.N.Y. 2004) (holding that inmate's complaints of abdominal pain, vomiting, heartburn, constipation, body odor, and extreme body heat did not constitute a serious medical need); *Scales v. Bristol Virginia City Jail*, 2007 WL 777532, *5 (W.D. Va. 2007) (allegations of digestive upset, nausea, diarrhea, and vomiting are not sufficiently serious medical needs to rise to the level of an Eighth Amendment violation); *Moy v. Evans*, 2007 WL 315088, *2 (S.D. Ill. 2007) (The plaintiff's claim that he suffered from constipation and accompanying pain, along with the failure to proffer any information regarding a diagnosis or condition,

failed to constitute a "serious medical need.").  Similarly, plaintiff merely alleges in his complaint that he suffered from stomach pains and chronic constipation. These symptoms do not rise to the level of a serious medical need.  Thus, the undersigned suggests that the Court need not address the second prong of *Wilson* for purposes of defendant's motion to dismiss, which should be granted.

  D.  <u>In Alternative, Defendant is Entitled to Summary Judgment</u>

  In the alternative, the undersigned suggests that even if plaintiff had a serious medical need, he cannot establish that defendant was deliberately indifferent.  "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent in the form of "malicious" or "sadistic" action.  *Farmer*, 511 U.S. at 861; *see also Estelle*, 429 U.S. at 105-106 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or

wantonness, not inadvertence or good faith error, characterizes deliberate indifference").

Even if plaintiff had alleged serious medical need, it is clear from the uncontroverted evidence accompanying defendant's motion for summary judgment that plaintiff cannot show deliberate indifference. As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983. *Estelle v. Gamble, supra*; *Byrd v. Wilson*, 701 F.2d at 595 n. 2. A delay in access to medical attention, however, can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (6th Cir. 1994), quoting, *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (*per curiam*), cert. denied, 496 U.S. 928 (1990). Further, a claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860-861.

Plaintiff's medical records establish that he was examined and treated by medical staff (including defendant) numerous times during his incarceration following his complaints of digestive problems. (Dkt. 28, Exs. B-C). Plaintiff

was regularly examined, he was provided medication as needed in response to his complaints, various tests were periodically performed, and other medical advice to alleviate his symptoms was given. *Id*. Plaintiff acknowledges this treatment, but claims that it was ineffective and that he requires "surgery." According to defendant, no surgery is medically indicated for plaintiff and plaintiff merely suffers from chronic constipation, for which he was regularly and appropriately treated. (Dkt. 28, Ex. C). Accordingly, the undersigned finds that although plaintiff may be dissatisfied with the treatment he received, this amounts to nothing more than a disagreement between defendant and plaintiff as to the proper course of treatment, and does not amount to a constitutional injury. Thus, the undersigned recommends that defendant's motion for summary judgment be granted.

      E.    <u>State Law Claims</u>

In light of the recommendations above, the undersigned also suggests that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it

should not reach state law claims."). Thus, it is further recommended that plaintiff's state law claims be dismissed without prejudice.

## IV.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that defendant's motion for summary judgment claiming that plaintiff failed to exhaust his administrative remedies should be **DENIED**, that defendants' motion to dismiss claiming that plaintiff failed to state a claim for deliberate indifference to his serious medical needs be **GRANTED**, in the alternative, that defendant's motion for summary judgment be **GRANTED**, and that plaintiff's state law claims be **DISMISSED** without prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

<table>
<tr><td></td><td>s/Michael Hluchaniuk</td></tr>
<tr><td>Date: January 13, 2009</td><td>Michael Hluchaniuk<br>United States Magistrate Judge</td></tr>
</table>

## **CERTIFICATE OF SERVICE**

I certify that on January 13, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Ronald W. Chapman and David B. Mammel, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Nakya Williams, # 249968, Huron Valley Complex, Men's, 3201 Bemis Road, Ypsilanti, MI 48197.

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov